***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
The parties submitted a packet of medical records, which was admitted into the record and marked as Stipulated Exhibit (1) and an Industrial Commission Form 22 Wage Chart, which was admitted into the record and marked as Stipulated Exhibit (2).
 *********** EVIDENTIARY RULING
Also, at the hearing before the Deputy Commissioner, plaintiff made use of handwritten diary related to her condition and medical treatment. Although no formal offer to introduce this diary into evidence was made by plaintiff, an admission of the diary into the evidentiary record would be improper even if the diary were authenticated due to repeated instances of hearsay statements contained in the diary.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. Plaintiff, who was fifty-one years of age on the date of hearing before the Deputy Commissioner, began working for defendant-employer in January 1998 as a Meter Reader.
2. On 12 August 1998, plaintiff was struck by a car backing out of a driveway as she was reading a water meter, resulting in a back injury. As the result of this incident, plaintiff was assigned a six and one-half percent (6.5%) permanent partial disability rating for which she was paid compensation.
3. Following this 12 August 1998 incident, plaintiff transferred to a secretarial position with defendant-employer at the North Fork Reservoir.
4. On 18 September 2000, while leaving work, plaintiff fell over a flowerpot and hit her knee on the cement sidewalk. It was afterwards determined that someone had moved the flowerpot onto the walkway. Plaintiff was evaluated on the date of the accident at Sisters of Mercy Urgent Care, and was diagnosed with abrasions to the hand, knee and elbow, contusions to the hand, knee, elbow and ribs. Following negative results from x-rays, plaintiff was released to return to work with limitations of no heavy pushing, pulling, or lifting, and no squatting and to change positions as needed when sitting through 21 September 2000.
5. On 21 September 2000, plaintiff was examined by Dr. J. Paul Martin at defendant-employer's health services department with complaints of a bruise on her left breast and an abrasion on her left knee. The abrasion over her left knee was covered with a band-aid and Dr. Martin noted that this wound was healing well. On 29 September 2000, plaintiff returned to Dr. Martin, at which time he noted that plaintiff had improved and released her to return to full duty.
6. On 26 October 2000, plaintiff returned to Dr. Martin with left SI joint pain. There was no complaint on that date related to plaintiff's left knee. Plaintiff again returned to Dr. Martin on 21 December 2000 with similar complaints of left SI joint pain and no complaints related to her left knee.
7. On 13 March 2001, plaintiff returned to see Dr. Martin and reported that approximately two weeks earlier she had stood up, and felt a pop in her left knee. Dr. Martin noted that there was no associated accident or unusual occurrence related to this incident and diagnosed plaintiff with chondromalacia and a possible lateral meniscus tear. Dr. Martin further noted that the injuries plaintiff sustained as the result of her 18 September 2000 fall had entirely resolved by the time of this knee-popping incident.
8. At the hearing, plaintiff testified that Dr. Martin had affirmatively indicated to her that the knee-popping incident was causally related to her work. Plaintiff further testified that her handwritten diary supported her recollection of this medical opinion. However, Dr. Martin's medical records do not support this testimony, and in his answers to the submitted written questions Dr. Martin unequivocally represents that he "did not indicate to (plaintiff) in any intended fashion that her injury was work related."
9. On 3 April 2001, plaintiff again returned to Dr. Martin for left knee pain at which time she had a full range of motion in her left knee. Dr. Martin's diagnosis on that date was left knee pain of uncertain etiology. Dr. Martin then referred plaintiff to Blue Ridge Bone and Joint Clinic for an orthopaedic evaluation.
10. On 19 April 2001, plaintiff was evaluated by Dr. Jay C. Jansen at the Blue Ridge Bone and Joint Clinic. Following his examination, Dr. Jansen determined that plaintiff had aggravated chondromalacia to the left knee and referred her to physical therapy.
11. On 29 May 2001, plaintiff returned to Dr. Jansen for a follow-up examination. Dr. Jansen's records indicate that as of that date plaintiff was doing well, was working her normal, full time job and that she was released from his care.
12. There is insufficient evidence of record to support a finding that the knee-popping incident, which occurred in March 2001, was causally related to the injury plaintiff sustained on 18 September 2000.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. There is insufficient evidence that plaintiff's knee popping incident which occurred in March 2001 was causally related to the injury she sustained on 18 September 2000. G.S. § 97-2(6).
2. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. Id.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be and is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of May 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN